IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23-CR-114-JFH |
| v. ) | |
| ) | |
| JOHN RAY COLLINS, et al, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

John Ray Collins, Jr. and Tambara Lorene Collins were indicted on August 9, 2023, in a superseding indictment charging Attempted Murder in Indian Country, Child Abuse in Indian Country, and Child Neglect in Indian Country, all involving injuries to two minor children, J.M. and R.M. (Docket No. 43). On September 23, 2023, Defendant John Ray Collins, Jr. (herein after "Defendant" or "Mr. Collins") filed a Motion for *Daubert* Hearing (Docket No. 104), urging the Court to conduct a hearing on the admissibility of the testimony of Dr. Lauren Conway, the government's child abuse expert, on the grounds that her opinions do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). *See generally* Fed. R. Evid. 702. The same day, Defendant filed a Motion in Limine Regarding Proffered Expert Testimony.[1] (Docket No. 103). On September 25, 2023, United States District Judge John F. Heil, III referred Mr. Collins' Motion in Limine and Motion for *Daubert* Hearing to the undersigned Magistrate Judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 111). A hearing on the motions

---

[1] Defendant indicated his Motion in Limine was "preemptive" and, in essence, he requests the same relief in both motions. That is, to determine the admissibility of Dr. Conway's expert testimony prior to her testifying. Therefore, the analysis in this report and recommendation applies to both motions.

was conducted on October 2, 2023. (Docket No. 126). For the reasons set forth below, the undersigned Magistrate Judge hereby recommends that Mr. Collins' Motion in Limine (Docket No. 103) and Motion for *Daubert* Hearing (Docket No. 104) both be DENIED.

I.     Analysis

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. The government, as proponent of the evidence, has the burden to show it is admissible under Rule 702. *See, e.g., United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009). The Court has a "gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003), *quoting Daubert,* 509 U.S. at 589. "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire,* 526 U.S. at 149, *quoting Daubert,* 509 U.S. at 592. Thus, "[u]nder Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez–Felix,* 450 F.3d 1117, 1122 (10th Cir. 2006).

At the hearing on October 2, 2023, Defendant's counsel argued that his primary concern in asking for a *Daubert* hearing was to ensure that Dr. Conway did not base her opinions during her trial testimony on records from Department of Human Services ("DHS") reports or medical records related to the children that Defendant's counsel had not received. In response, the government indicated that it had provided defense counsel with all the DHS reports and medical records related to the children and was willing to identify the specific page numbers in the discovery. The government clearly stated that Dr. Conway would not utilize any records related to the children other than those provided to defense counsel.

The undersigned Magistrate Judge finds this issue to be a discovery issue. As this was Plaintiff's only concern, Plaintiff has not raised grounds for a *Daubert* hearing. However, the undersigned Magistrate Judge, in anticipation of the Court's gatekeeping function under *Daubert*, identified some issues contained in the government's Notice of Expert Testimony (Docket No. 75) at the hearing. The government's Expert Notice contained the following statements:

> Dr. Conway will testify to all aspects of her knowledge in the area of child physical abuse and child abuse examinations. It is anticipated that Dr. Conway will testify regarding the following general terms and their application to this case:
>
> a. Her education, background, training, and experience.
>
> b. Her knowledge and experience in the area of child physical abuse.
>
> c. That she was one of the treating physicians of J.M., during his hospitalization, and of R.M., in an outpatient setting, in relation to the charges in this case.
>
> d. Her review of the records, reports, photographs, medical records, medical history, etc. which was provided in discovery to the defense.
>
> e. Her knowledge of all aspects of human anatomy, the mechanism of injury in child physical abuse, and **the injuries sustained as a result of child physical abuse**.
>
> f. Her knowledge regarding the importance of history, her experience in

       obtaining history from parents and/or potential perpetrators, and all factors used to determine between accidental or non-abusive trauma and abusive trauma.

    g. Her knowledge regarding the victims' injuries and the medical diagnosis of **non-accidental** trauma and child abuse.

    h. During her testimony, it is possible that Dr. Conway will use a demonstrative aid to assist in her explanation of anatomy and abusive head trauma.

(Docket No. 75 at 2) (emphasis added).

The undersigned Magistrate Judge examined each of the terms from the government's notice (a. through h.) and their application(s) with defense counsel to ascertain which ones he objected to. Defense counsel reiterated only his discovery concerns regarding the materials the expert used as the basis for her opinions. The undersigned Magistrate Judge then identified the Court's own concerns. Namely, the terms and their application of "e . . . . the injuries sustained as a result of child physical abuse[,]" and "g . . . . the medical diagnosis of ***non-accidental*** trauma and child abuse." (Docket No. 75 at 2). The undersigned Magistrate Judge requested that the government point out specifically what the expert witness's testimony would be regarding "the injuries sustained as a result of child physical abuse" and what opinions she would offer related to the injuries being from "***non-accidental*** trauma and child abuse."

The government indicated that Dr. Conway would testify regarding looping[2] and the various stages of fracture healing. After the undersigned Magistrate Judge expressed concern over the expert witness's ability to opine as to "the medical diagnosis of ***non-accidental*** trauma and child abuse," the government offered to strike the term "***non-accidental***" from their notice with no objection from defense counsel.

---

[2] Looping herein is understood by the Court to be a mark on a child's body which is consistent with being hit with a item such as a belt or rope that was looped prior to coming into contact with the child leaving a bruise that mirrors the loop of the belt or rope.

"Before considering whether an expert's testimony is reliable or helpful to the jury, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education to render an opinion.'" *United States v. Gutierrez de Lopez,* 761 F.3d 1123, 1136 (10th Cir. 2014), *quoting Nacchio, 555* F.3d at 1241. Based on this, the only issues before the undersigned Magistrate Judge are: (i) whether Dr. Conway is qualified by knowledge, skill, experience, training, or education to testify about looping and the various stages of fracture healing; (ii) whether her testimony is reliable or helpful to the jury; and (iii) whether the record before the Court is sufficient to make the above two decisions without the necessity of a hearing.

Based on the government's Expert Notice and Dr. Conway's *Curriculum Vitae,* the undersigned Magistrate Judge finds Dr. Conway is clearly qualified by knowledge, skill, experience, training, or education. According to Dr. Conway's *Curriculum Vitae,* she is an Assistant Professor and Fellow in the Department of Pediatrics at the University of Oklahoma's School of Community Medicine.  (Docket No. 75, Exhibit 1 at 1). She has been a board-certified pediatrician for over nine years and has been board-certified in child abuse pediatrics for over two years. (*Id.*). She has received numerous honors and awards in the discipline of pediatrics. (*Id.* at 2). She has been either an author, contributing author, or mentee to five peer reviewed or referred articles relating to child abuse and maltreatment. (*Id.* at 3). She also has numerous non-peer reviewed publications as either author, contributing author, or mentee. (*Id.* at 4). Additionally, Dr. Conway has testified in excess of 38 times as an expert witness in these areas. (Docket No. 75 at 5-7). Most significantly, Dr. Conway has testified as an expert in the area of child abuse in both the United States District Court for the Eastern District of Oklahoma and for the Northern District of Oklahoma. (*Id.* at 6-7). Therefore, the undersigned Magistrate Judge finds that Dr. Conway "is

qualified by knowledge, skill, experience, training, or education to render an opinion." *Gutierrez de Lopez,* 761 F.3d at 1136. Furthermore, Dr. Conway's expertise is pertinent to this case because the government charged Mr. Collins with Attempted Murder by Child Abuse, Child Neglect and Child Abuse, and because the government will offer evidence of the children's injuries.

      The undersigned Magistrate Judge now turns to the issue of the reliability of Dr. Conway's proposed testimony. Factors for evaluating whether an expert's scientific testimony is reliable include: (i) whether a theory or technique can be tested, (ii) whether it has been subject to peer review and publication, (iii) the known or potential rate of error, and (iv) whether such a theory or method has achieved "general acceptance" in the scientific community. *Daubert,* 509 U.S. at 593–594. Other factors helpful in identifying whether evidence is sufficiently reliable are: (i) whether an expert is offering opinions arising out of research conducted independent of the litigation, or developed expressly for purposes of testifying, *see Daubert v. Merrell Dow Pharmaceuticals,* 43 F.3d 1311, 1317 (9th Cir. 1995); (ii) whether an expert unfairly extrapolates from an accepted premise to an unfounded conclusion, *see General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997); (iii) whether an expert adequately accounts for obvious alternative explanations, *see Claar v. Burlington N.R.R.,* 29 F.3d 499, 502 (9th Cir.1994); (iv) whether an expert 'is being as careful as he6ouldd be in his regular professional work outside his paid litigation consulting[,]" *see Sheehan v. Daily Racing Form, Inc.,* 104 F.3d 940, 942 (7th Cir.1997); and (v) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, *see Kumho Tire,* 526 U.S. at 150. Advisory Committee Notes to Fed. R. Evid. 702, 2000 Amendments. These lists are not exclusive, as the Supreme Court reiterated in *Kumho Tire:* "[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert,* nor can we now do so for subsets of cases categorized by category of expert

or by kind of evidence . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Kumho Tire,* 526 U.S. at 150 (quotation omitted). Further, the Tenth Circuit likewise noted that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances." *United States v. Garza,* 566 F.3d 1194, 1199 (10th Cir. 2009).

The government's Response to Mr. Collins' Motion in Limine and Motion for a *Daubert* Hearing (Docket No. 119), the government's Expert Testimony Notice (Docket No. 75), as well as the government's representations at the hearing indicates: (i) that Dr. Conway was a treating physician for the children; (ii) she reviewed medical reports regarding the children; (iii) she reviewed DHS reports regarding the children; and (iv) she will rely on numerous cited studies on child abuse. Dr. Conway's opinions are thus based on reliable principles. Specifically, the government's notice of Dr. Conway's testimony cites the following studies as the bases for her opinions, amongst many others:

F.D. Dunstan, et al., *A scoring system for bruise patterns: a tool for identifying abuse*, 86 Arch Dis Child 330 (2002);

A.M. Kemp, et al., *Bruising in children who are assessed for suspected physical abuse*, 99 Arch Dis Child 108 (2014);

N. Ravichandiran, et al., *Delayed identification of pediatric abuse-related fractures*, 125 Pediatrics 60 (2010);

J.M. Leventhal, et al., *Incidence of fractures attributable to abuse in young, hospitalized children: results from analysis of a United States database*, 122 Pediatrics 599 (2008); and

A.M. Kemp, et al., *Patterns of skeletal fractures in child abuse: systematic review*, 337 BMJ 1518 (2008).

(Docket No. 75 at 2-4).

These studies support Dr. Conway's bases of knowledge regarding pediatric bruising and fractures. All the referenced studies were subject to peer review and, as evidenced by a cursory citation search of the studies, all are clearly the type of studies relied on in the field of child abuse. Accordingly, the record before the undersigned Magistrate as to the reliability and bases of Dr. Conway's opinion is sufficient without a hearing.

The undersigned Magistrate Judge must now address whether Dr. Conway's testimony will assist the trier of fact. "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Gutierrez de Lopez,* 761 F.3d at 1136, (quoting *United States v. Garcia,* 635 F.3d 472, 476–477 (10th Cir. 2011)); *see also Rodriguez–Felix,* 450 F.3d at 1123 ("[T]he court will still consider other nonexclusive factors to determine whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. In essence, the question is 'whether [the] reasoning or methodology properly can be applied to the facts in issue.'") (internal citations omitted) (quoting *Daubert,* 509 U.S. at 593).

The undersigned Magistrate Judge finds that the testimony of Dr. Conway outlined in the government's notice would indeed be helpful to the jury in this case, as such issues are not within the common knowledge of a prospective juror. "Ultimately, . . . expert testimony is admissible under Rule 702(a) if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." *Gutierrez de Lopez,* 761 F.3d at 1136 (quotation omitted). "Doubts about whether an expert's testimony will be useful should generally be resolved

in favor of admissibility unless there are strong factors such as time or surprise favoring exclusion." *Id*. (quotation omitted).

The undersigned Magistrate Judge finds that the Expert Notice, government's Response to Mr. Collins' request for a *Daubert* hearing, and the representations made at the hearing provide a sufficient basis to support Dr. Conway's testimony without the necessity for a hearing before the District Court. Therefore, the undersigned Magistrate Judge recommends that the Court deny Mr. Collins' Motion in Limine and Motion for a *Daubert* Hearing, and further allow Dr. Conway to present expert testimony consistent with the government's notice.

## II.    Conclusion

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that Defendant John Ray Collins, Jr.'s Motion in Limine (Docket No. 103) and Motion for *Daubert* Hearing (Docket No. 104) be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(2), a party may file specific written objections to the Magistrate Judge's report and recommendations. The exigencies of the Court's calendar amid the ongoing *McGirt* crisis, and the need to maintain the trial date in this matter, require the Court to shorten the window for filing objections to seven (7) days with an additional seven (7) days for responses.[3]  *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978); *Sabal Trail Transmission, LLC. v. 7.72 Acres in Lee Cnty., Ala.*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) (collecting cases).[4]  Any objections must be filed on or before October 10, 2023.

---

[3] The undersigned Magistrate Judge shortens the objection period after consulting with the presiding judge in this matter, U.S. District Judge John F. Heil, III.

[4] Specifically, the Northern and Eastern Districts of Oklahoma have unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the

If specific written objections are timely filed, Fed. R. Crim. P. 59(b)(3) directs the district judge to:

> consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.

Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636(b)(1). Failure to timely object waives a party's right to appellate review. *See United States v. Goebel*, 959 F.3d 1259, 1266-67 (10th Cir. 2020).

DATED this 3rd day of October, 2023.

_____
D. Edward Snow
United States Magistrate Judge

---

Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *aff'd* 76 F.4th 1007 (10th Cir. 2023).