IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-114-JFH-1 |
| JOHN RAY COLLINS, JR., | |
| Defendant. | |

**OPINION AND ORDER**

Before the Court are two motions filed by Defendant John Ray Collins, Jr. ("Defendant") [Dkt. No. 103; Dkt. No. 104 (collectively, the "Motions")] related to an anticipated expert witness for the United States of America ("Government") [Dkt. No. 75]. The Court referred the Motions to Magistrate Judge D. Edward Snow for report and recommendation ("R&R"). Dkt. No. 111. Magistrate Judge Snow conducted a hearing [Dkt. No. 146] and issued an R&R recommending denying the Motions [Dkt. No. 128]. The Government filed a "response and objection" to the R&R. Dkt. No. 134. For the reasons stated, the Court ADOPTS the R&R insofar as it recommends denying the Motions, MODIFIES the R&R to clarify the permissible bounds of expert testimony in this case, and DENIES the Motions.

**BACKGROUND**

J.M. and R.M. are brothers, six and four years old respectively. Dkt. No. 113 at 2. Defendant is their stepfather and his co-defendant Tambara Lorene Collins ("T. Collins") is their biological mother. *Id.* Defendant and T. Collins share a last name and an infant child, and they hold themselves out to be a married couple.[1] *Id.*

---

[1] No proof of a legal marriage has been presented to the Court. *See* Dkt. No. 135.

Between January and June 2023, Defendant and T. Collins allegedly severely physically abused J.M. and R.M. Dkt. No. 43. Specifically, Defendant is charged with attempting to murder J.M. by striking him on the head with a metal pipe; abusing J.M. by striking, kicking, twisting his arms and hands, and lashing him with an object; abusing R.M. by striking him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* T. Collins is charged with abusing J.M. by striking and lashing him with a belt and failing to protect him; abusing R.M. by striking him and failing to protect him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* Defendant is charged as a non-Indian under 18 U.S.C. § 1152 and T. Collins is charged as an Indian under 18 U.S.C. § 1153.

The Government's briefing provides alleged details of the underlying facts. Dkt. No. 108; Dkt. No. 110; Dkt. No. 113; Dkt. No. 119.[2] It describes "a concerned citizen" who had attempted to visit Defendants' residence at 1315 S. Oklahoma Ave., Okmulgee, Oklahoma (the "1315 address") but had "been denied entry" by T. Collins. Dkt. No. 113 at 1. On June 12, 2023, this individual learned that Defendants were out of the house to take their infant to the hospital for a fever, and she entered the 1315 address because she had "developed fears for the children who lived within that household." *Id.* She found four-year-old R.M. and six-year-old J.M. home alone;

---

[2] The factual statements in these briefs appear largely identical.

2

R.M. had a large, circular bruise under one eye, while J.M. was "laying on [a] blanket, soaked in his own blood, on the floor of [a] bedroom." *Id.* at 2. When she asked J.M. if he was okay, he said he was not and that his mom and dad hit him a lot. *Id.* The individual left the residence and called the Okmulgee County Sheriff's Office ("OCSO").

Defendant and T. Collins apparently arrived at their residence between the time the individual left and OCSO arrived. The Government describes OCSO body camera footage where T. Collins "showed hesitation" interacting with the officer, "insisted" to him that "our children are fine," eventually retrieved R.M. from inside the house after repeated request by the officer, is heard telling R.M. to "remember what I told you about all that lying," and is heard telling the deputy "we've been having lying problems." *Id.* at 2. The body camera footage also apparently shows Defendant holding J.M. by the arm. According to the Government, J.M. had numerous apparent injuries and was in visible pain, and deputies reported that both R.M. and J.M. "smelled like stale urine and filth." *Id.* J.M. purportedly told OCSO at various times that "my mom and dad beat me up" and "I've been locked up in a room." *Id.* at 3.

Both brothers allegedly received medical treatment and were later forensically interviewed. J.M. was taken to the Okmulgee Hospital and then life-flighted to St. Francis Hospital in Tulsa where he was hospitalized for a week, from June 13 to June 21, 2023, with a lacerated liver, kidney failure, and numerous other injuries. *Id.* During his forensic interview, J.M. told the interviewer that his parents "stompted" and "whooped" him; blockaded his door with two heavy totes so he could not get out to use the bathroom, get food or water, or brush his teeth; and did not clean the Paw Patrol potty in his room, which caused it to get "stinkier and stinkier." *Id.* J.M. also described his "dad" hitting him on the head with a big metal pipe that made some noises. *Id.* R.M. was taken to the Okmulgee Hospital and treated for extensive bruising and lacerations. During his

forensic interview, he told the interviewer that his parents "beat [him] up" with their fists and hands. *Id.* Each brother also described abuse inflicted on the other: J.M. said that the "whooping" happened to R.M. as well, and R.M. said that when his mom got mad, she "beats J.M. up." *Id.*

This federal case began by criminal complaint against T. Collins on June 15, 2023. Dkt. No. 1. The initial indictment, filed on July 12, 2023, also named only T. Collins as a defendant. Dkt. No. 20. Defendant was added as a defendant in the superseding (and currently operative) indictment filed on August 9, 2023. Dkt. No. 43. His jury trial is set for November 6, 2023. Dkt. No. 41; Dkt. No. 65.

The Government filed a notice of intent to offer expert testimony regarding Dr. Lauren Conway ("Dr. Conway"), a board-certified child abuse pediatrician. Dkt. No. 75. The Government states Dr. Conway will "testify to all aspects of her knowledge in the area of child physical abuse and child abuse examinations." *Id.* at 2. Specifically, she will testify to:

> a. Her education, background, training, and experience.
> 
> b. Her knowledge and experience in the area of child physical abuse.
> 
> c. That she was one of the treating physicians of J.M., during his hospitalization, and of R.M., in an outpatient setting, in relation to the charges in this case.
> 
> d. Her review of the records, reports, photographs, medical records, medical history, etc. which was provided in discovery to the defense.
> 
> e. Her knowledge of all aspects of human anatomy, the mechanism of injury in child physical abuse, and the injuries sustained as a result of child physical abuse.
> 
> f. Her knowledge regarding the importance of history, her experience in obtaining history from parents and/or potential perpetrators, and all factors used to determine between accidental or non-abusive trauma and abusive trauma.
> 
> g. Her knowledge regarding the victims' injuries and the medical diagnosis of non-accidental trauma and child abuse.
> 
> h. During her testimony, it is possible that Dr. Conway will use a demonstrative aid to assist in her explanation of anatomy and abusive head trauma.

*Id.*

## AUTHORITY AND ANALYSIS

As an initial matter, the Motions are quite short and conclusory, which limits the proper scope of review. Dkt. No. 103; Dkt. No. 104. "Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it." *Ellis v. Hobbs Police Dep't*, 472 F. Supp. 3d 1087, 1093 (D.N.M. 2020) (collecting cases). Phrased differently, "the district court must reply in some meaningful way to the *Daubert* concerns *the objector has raised*." *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1190 (10th Cir. 2014) (emphasis added) (explaining a district court should "focus its attention on the specific factors implicated by the circumstances at hand"). *See also United States v. Stevenson*, Case No. CR-21-275-RAW, 2022 WL 4368466, at *1 n.2 (E.D. Okla. Sept. 21, 2022) (noting where a defendant made conclusory pretrial *Daubert* challenge and sought to reserve specific objections for trial that the "purpose of a '*Daubert* motion' is to make at least a *prima facie* (i.e., more than boilerplate) objection to enable the court to exercise its discretion properly as to whether a hearing should be held" and raising only a general objection "defeats that purpose").

Defendant did not raise specific complaints in his Motions, and he raised only one issue during the Magistrate Court hearing.[3] Defense counsel stated he was concerned that Dr. Conway would rely on materials not provided to him in discovery, based on experience in a separate case where she referenced additional reports during trial that had not been produced by prosecutors. Dkt. No. 146 at 16:2-11. The Government stated all discovery here been provided to Defendant. *Id.* at 21:7-22:3. This appears to have resolved Defendant's concerns at the hearing, and no concerns have been raised by either party since the R&R. The proper *Daubert* inquiry ended here.

---

[3] Defendant did not challenge Dr. Conway's qualifications, education, knowledge, or experience in the area of child physical abuse. Dkt. No. 146 at 15:9-15, 17:16-18.

The hearing continued, however, when the Magistrate Judge "identified some issues" he believed to exist within the Government's expert notice. Dkt. No. 128 at 3. Specifically, he expressed concern that Dr. Conway's anticipated testimony about "medical diagnosis of non-accidental trauma" was "getting dangerously close to testifying to things that the jury should not hear." Dkt. No. 146 at 28:10-15. After discussion with the Magistrate Judge, including several references by the Magistrate Judge to various studies listed in Dr. Conway's materials, the Government offered to strike the word "non-accidental" from its expert notice. *Id.* at 35:15-24.

In his R&R, the Magistrate Judge recommended the Court deny the Motions. Dkt. No. 128. Defendant did not object. The Government filed what it styled a "response and objection," where it stated it agreed with the Magistrate Judge's recommendation to deny the Motions but "respectfully request[ed] a review of the Magistrate Court's analysis and a clarification of the parameters of the Magistrate Court's Report and Recommendation." Dkt. No. 134 at 1. Because the Government did not object to the R&R's central recommendation that the Motions be denied, the Court construes this filing not as a true objection triggering de novo review under 28 U.S.C. § 636(b)(1) but as a request for additional clarity ahead of trial preparation.

The Government first asserts that "the Court's focus should not be limited to any particular publications" when determining whether Dr. Conway may testify about her diagnoses. The Court agrees. An expert witness may rely on a variety of sources to reach her opinions and "may acquire expertise on a subject based on experience in that field." *United States v. Woods*, 596 F. Supp. 3d 1271, 1275 (N.D. Okla. 2022) (citing *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014)). The Magistrate Judge and both parties were satisfied with Dr. Conway's general experience and qualifications, and this Court is as well.

The Government next states "though their experience, training, and background as Child Abuse and Neglect Specialists, Pediatricians can sometimes definitively diagnose that injuries could not have been caused as a result of accident; but rather the injuries are diagnostic of non-accidental trauma and child abuse." Dkt. No. 134 at 6. It does not specifically ask to rescind its offer during the hearing to strike the word "non-accidental" from its expert notice, but in substance requests that Dr. Conway be allowed to testify to the abusive or non-accidental nature of her diagnoses.

Neither the Magistrate Judge nor the parties directly cited evidentiary rules in their discussion of whether Dr. Conway may testify about her "non-accidental" diagnoses. The Court examines two rules that are relevant: the general expert witness testimony rule at Federal Rule of Evidence 702 and the rule about opinions on ultimate issues at Federal Rule of Evidence 704—specifically Rule 704(b) that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."

Regarding Rule 702, it is well-established that an expert witness may "'summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with [a] victim's allegations of [] abuse' and . . . 'inform the jury of characteristics in [] abused children and describe the characteristics the alleged victim exhibits.'" *United States v. Charley*, 189 F.3d 1251, 1264-65 (quoting *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993)). *Accord Abshier v. Oklahoma*, 28 P.3d 579, 613 (Okla. Crim. App. 2001) (applying the state analogue of Rule 702 in child abuse case and noting testimony "that injuries to a child were caused by 'non-accidental trauma' . . . was not novel expert testimony but long accepted medical testimony"), *overruled on other grounds by Jones v. Oklahoma*, 134 P.3d 150 (Okla. Crim. App. 2006).

Regarding Rule 704(b), in a recent child abuse and neglect case in this district, the defendant objected to a child abuse physician's anticipated expert testimony that the victim "was subjected to" child abuse and child neglect, claiming it was improper opinion testimony that the defendant acted intentionally in violation of Rule 704.  *United States v. Keys*, 638 F. Supp. 3d 1282, 1292-93 (E.D. Okla. 2022).  The Hon. Ronald A. White rejected this argument, reasoning that Rule 704 "only prevents experts from expressly stating the final conclusion or inference as to a defendant's mental state.  The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state."  *Id.* (quoting *United States v. Goodman*, 633 F.3d 963, 970 (10th Cir. 2011)).  Because the opinions that the child in *Keys* was subjected to child abuse and child neglect did not state final conclusions about the defendant's mental state, they were admissible.  *Id.*

Likewise in another recent child abuse and neglect case in this district, the defendants objected to Dr. Conway's anticipated expert testimony that "she medically diagnosed the victim as having suffered child abuse and neglect" on multiple grounds including Rule 704 and that it invaded the province of the jury.  *United States v. Menees*, Case No. CR-21-151-TDD, 2023 WL 127032 (E.D. Okla. Jan. 6, 2023).[4]  The Hon. Timothy D. DeGiusti, sitting by designation, overruled the defendants' objections, explaining that "[u]nder Tenth Circuit precedent, an expert witness may testify about an alleged victim's symptoms which are consistent with abuse."  *Id.* at *4 (collecting cases).

---

[4] Although *Menees* involved the same expert and the same prosecutor as this case, and reached the same result requested by the Government in this case, the Government did not cite *Menees* in its briefing.  Where a recent opinion from this district is squarely in its favor in an analogous case, it would be reasonable for the Government to call the Court's attention to that opinion and not rely on the Court to find the case through its own research, especially given the tsunami of criminal cases the Court has.  *See* Dkt. No. 135 (describing the overburdened state of the Court's docket).

Dr. Conway may testify consistent with the well-established parameters of child abuse expert testimony set out in *Charley*, *Keys*, *Menees*, and the cases cited therein. Defendant objects to the Government's requested clarification, arguing that the Government "seeks [a] re-do" after "conced[ing] they would not be seeking to elicit testimony that fell within the province of the jury." Dkt. No. 137 at 1-2. But caselaw is clear: the anticipated testimony does *not* fall within the province of the jury.[5]

## CONCLUSION

IT IS THEREFORE ORDERED that Magistrate Judge Snow's R&R [Dkt. No. 128] on Defendant's motion in limine [Dkt. No. 103] and motion for hearing [Dkt. No. 104] is ADOPTED AS MODIFIED. The motions are DENIED.

Dated this 17th day of October 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[5] The Court has no reason to doubt the Government's statement that Dr. Conway will not "testify or offer an opinion as to who inflicted the abuse or neglect." Dkt. No. 134 at 9 (emphasis removed).