IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN RAY COLLINS, JR.,<br><br>Defendant. | Case No. 23-CR-114-JFH-1 |

## OPINION AND ORDER

Before the Court is a motion to dismiss for violations of the Due Process Protections Act ("DPPA"), *Brady*, and Rule 16 ("Motion") filed by Defendant John Ray Collins ("Defendant"). Dkt. No. 145. The United States of America ("Government") opposes the Motion. Dkt. No. 148. For the reasons stated, the Motion is DENIED.

## BACKGROUND

J.M. and R.M. are brothers, six and four years old respectively. Dkt. No. 113 at 2. Defendant is their stepfather and his co-defendant Tambara Lorene Collins ("T. Collins") is their biological mother. *Id.* Defendant and T. Collins share a last name and an infant child, and they hold themselves out to be a married couple.[1] *Id.*

Between January and June 2023, Defendant and T. Collins allegedly severely physically abused J.M. and R.M. Dkt. No. 43. Specifically, Defendant is charged with attempting to murder J.M. by striking him on the head with a metal pipe; abusing J.M. by striking, kicking, twisting his arms and hands, and lashing him with an object; abusing R.M. by striking him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection,

---

[1] No proof of a legal marriage has been presented to the Court. *See* Dkt. No. 135.

food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* T. Collins is charged with abusing J.M. by striking and lashing him with a belt and failing to protect him; abusing R.M. by striking him and failing to protect him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* Defendant is charged as a non-Indian under 18 U.S.C. § 1152 and T. Collins is charged as an Indian under 18 U.S.C. § 1153.

The Government's briefing provides alleged details of the underlying facts. Dkt. No. 108; Dkt. No. 110; Dkt. No. 113; Dkt. No. 119.[2] It describes "a concerned citizen" who had attempted to visit Defendants' residence at 1315 S. Oklahoma Ave., Okmulgee, Oklahoma (the "1315 address") but had "been denied entry" by T. Collins. Dkt. No. 113 at 1. On June 12, 2023, this individual learned that Defendants were out of the house to take their infant to the hospital for a fever, and she entered the 1315 address because she had "developed fears for the children who lived within that household." *Id.* She found four-year-old R.M. and six-year-old J.M. home alone; R.M. had a large, circular bruise under one eye, while J.M. was "laying on [a] blanket, soaked in his own blood, on the floor of [a] bedroom." *Id.* at 2. When she asked J.M. if he was okay, he said he was not and that his mom and dad hit him a lot. *Id.* The individual left the residence and called the Okmulgee County Sheriff's Office ("OCSO").

---

[2] The factual statements in these briefs appear largely identical.

Defendant and T. Collins apparently arrived at their residence between the time the individual left and OCSO arrived. The Government describes OCSO body camera footage where T. Collins "showed hesitation" interacting with the officer, "insisted" to him that "our children are fine," eventually retrieved R.M. from inside the house after repeated request by the officer, is heard telling R.M. to "remember what I told you about all that lying," and is heard telling the deputy "we've been having lying problems." *Id.* at 2. The body camera footage also apparently shows Defendant holding J.M. by the arm. According to the Government, J.M. had numerous apparent injuries and was in visible pain, and deputies reported that both R.M. and J.M. "smelled like stale urine and filth." *Id.* J.M. purportedly told OCSO at various times that "my mom and dad beat me up" and "I've been locked up in a room." *Id.* at 3.

Both brothers allegedly received medical treatment and were later forensically interviewed. J.M. was taken to the Okmulgee Hospital and then life-flighted to St. Francis Hospital in Tulsa where he was hospitalized for a week, from June 13 to June 21, 2023, with a lacerated liver, kidney failure, and numerous other injuries. *Id.* During his forensic interview, J.M. told the interviewer that his parents "stompted" and "whooped" him; blockaded his door with two heavy totes so he could not get out to use the bathroom, get food or water, or brush his teeth; and did not clean the Paw Patrol potty in his room, which caused it to get "stinkier and stinkier." *Id.* J.M. also described his "dad" hitting him on the head with a big metal pipe that made some noises. *Id.* R.M. was taken to the Okmulgee Hospital and treated for extensive bruising and lacerations. During his forensic interview, he told the interviewer that his parents "beat [him] up" with their fists and hands. *Id.* Each brother also described abuse inflicted on the other: J.M. said that the "whooping" happened to R.M. as well, and R.M. said that when his mom got mad, she "beats J.M. up." *Id.*

This federal case began by criminal complaint against T. Collins on June 15, 2023. Dkt. No. 1. The initial indictment, filed on July 12, 2023, also named only T. Collins as a defendant. Dkt. No. 20. Defendant was added as a defendant in the superseding (and currently operative) indictment filed on August 9, 2023. Dkt. No. 43. His jury trial is set for November 6, 2023. Dkt. No. 41; Dkt. No. 65.

Defendant was arraigned on August 17, 2023. Dkt. No. 55. At that time, the Magistrate Judge entered the district's standard minute order regarding criminal discovery, which states:

> Pursuant to the Due Process Protections Act, the government is reminded of its obligations pursuant to Brady v. Maryland and its progeny to disclose material that is favorable to the defendant and material to defendant's guilt or punishment. The failure to do so in a timely manner may include dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances.

Dkt. No. 59. The Government moved for [Dkt. No. 49] and obtained [Dkt. No. 62] a protective order governing discovery. The parties submitted a joint status report regarding discovery on September 11, 2023, in which they stated that the Government had provided defense counsel with flash drives containing all available discovery in the matter. Dkt. No. 74 at 1. On September 18, 2023, Defendant filed an "emergency motion to compel" the production of his cell phone, stating:

> Mr. Collins is currently in custody in the Okmulgee County Jail, and when he was arrested, they took his wallet, his keys, and his cell phone. The cell phone is not listed in the Government's discovery as being seized. Mr. Collins has signed a release of his personal property, and the undersigned has obtained both his wallet and key from the Okmulgee County Jail (Okmulgee County Criminal Justice Authority), but the seized cell phone has not been provided. The jail claims they do not have his cell phone. The undersigned has requested of the Government to locate and make available Mr. Collins cell phone, but to date there has not been any return of this personal property that has been seized. The undersigned is unable to contact or locate witness, cannot assist Mr. Collins in basic requests, and it is likely this cell phone will contain exculpatory information.

Dkt. No. 89 at 2. The Court denied this motion without prejudice because it did not comply with Local Criminal Rule 12.1(B), which requires the first page of every criminal motion to contain a

statement as to whether or not opposing counsel objects to the motion. Dkt. No. 92.[3] The Court offered Defendant a chance to refile the motion [Dkt. No. 101], but Defendant instead filed a motion to withdraw the original motion, stating the Government advised him the cell phone was in state custody and "agreed to assist [him] in not opposing some form of motion for an order that would allow for obtaining the cell phone with exculpatory evidence" [Dkt. No. 106]. The Court denied this motion as moot since it had already denied the predicate motion. Dkt. No. 112.

Defendant next brought his cell phone to the Court's attention nearly three weeks later on October 12, 2023, when he filed an opposed motion for leave to file out of time a motion to dismiss for violations of the DPPA, *Brady*, and Rule 16. Dkt. No. 140. That motion stated the Government did "not dispute the discovery references 'exculpatory evidence' on the Defendant's cell phone"[4] and that "[n]o cell phone information from either Defendant (text messages, phone logs, or location data) has been provided to the Defendant." *Id.* at 1. The Court granted Defendant's request and this Motion followed on October 12, 2023. Dkt. No. 145. The Motion argues that the charges against Defendant must be dismissed because he had not been able to obtain discovery regarding his cell phone. *Id.* The Government responded on October 16, 2023, and provided additional background about the parties' efforts to obtain the cell phone's data. Dkt. No. 148.[5] The Government also stated Defendant was provided with an extraction of the cell phone data on October 13, 2023. *Id.* at 4.

---

[3] The motion also failed to comply with Local Criminal Rule 16.1(A), which requires counsel filing a discovery motion to certify in writing to the Court that the opposing attorneys have conferred in good faith and have been unable to resolve the dispute.

[4] At pretrial conference the same day, the Government stated it *does* dispute this.

[5] Of note, the Government's response states that it offered to arrange a meeting with state authorities to review the device in mid-September and defense counsel never replied with availability for such a meeting. Dkt. No. 148 at 2.

## AUTHORITY AND ANALYSIS

### I. Due Process

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). If a defendant claims a delay in production of *Brady* material occurred pretrial, the Court must examine whether "an earlier disclosure would have created a reasonable doubt of guilt." *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) (quotation and citation omitted). A delay in pretrial disclosure may also be a *Brady* violation if the delayed disclosure "[threw] existing strategies and trial preparation into disarray" or otherwise "altered defense strategy" in a way that "meaningfully alter[ed] a defendant's choices before and during trial." *Id.* (quotations and citations omitted).

If the Court "concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, [it] has discretion to determine an appropriate remedy." *Id.* However, "not every delay in disclosure of *Brady* material is necessarily prejudicial to the defense." *Id.* at 1056. "To justify imposition of a remedy, the defense must articulate to the district court the reasons why the delay should be regarded as materially prejudicial." *Id.* Here, Defendant has not articulated any prejudice, let alone material prejudice.

Various references to Defendant's cell phone appear on the docket across the past two months. A protective order governing discovery has been in place since mid-August. Dkt. No. 62. In mid-September, Defendant filed an "emergency motion to compel" the production of the cell phone. Dkt. No. 89. The Court denied this motion without prejudice for failure to comply with local rules [Dkt. No. 92] and provided Defendant an opportunity to refile [Dkt. No. 101].

Instead of refiling, however, Defendant filed a motion to withdraw his emergency motion, stating the Government "agreed to assist [defense counsel] in not opposing some form of motion for an order that would allow for obtaining the cell phone with exculpatory evidence." Dkt. No. 106. Defendant did not raise the issue again until the day of the parties' pretrial conference in mid-October, when he requested leave to file a motion to dismiss out of time. Dkt. No. 140.

Defendant's litigation strategy effectively removed the issue of the cell phone from the Court's consideration. Although Defendant alluded to a potential new motion in his motion to withdraw his original motion, he never filed such a follow-up. Had he requested the Court's intervention in a timely fashion, the Court could have potentially assisted Defendant in resolving his concerns. However, the Court finds no prejudice or basis for any sort of sanction—especially the drastic remedy of dismissal—where Defendant raised the issue without following the Court's rules, withdrew the issue from the Court's attention, alluded to re-raising the issue with the Court in a future filing, and ultimately chose *not* to re-raise the issue.

Nor has Defendant established that the evidence would tend to exonerate him. "The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." *United States v. Ahrensfield*, 698 F.3d 1310, 1319 (10th Cir. 2012) (quotation and citation omitted). Defendant describes in his notice of alibi that the "cell phone will contain both messages and 'location history' of where the defendant was when his co-defendant Tambara Collins abused each of the children." Dkt. No. 139 at 1.[6] But the Motion equivocates on this point, stating "there

---

[6] The notice of alibi also claims that discovery "uses the exact wording[] of 'exculpatory' evidence" regarding the phone. Dkt. No. 139 at 1. However, to date, the only exhibit of discovery provided by Defendant does not use such specific language. Dkt. No. 145-1. Rather, it describes an interview with a task force officer where Defendant agreed to talk to her if he could "have [his] phone to show [her] the messages." *Id.* at 2. The officer retrieved the phone and mirandized Defendant, who then "stated all children are liars," "asked for his phone," and "played the

is information that *appears* to be exculpatory, in the form of multiple messages (text or other written format) and voicemails on the cell phone." Dkt. No. 145 at 3 (emphasis added). These assertions are too speculative to carry Defendant's burden.

This is not a case where one specific location on one specific date is implicated—the operative indictment alleges abuse occurred over a six-month period and without a more specific location than the jurisdictional requirement that the charged conduct occurred in the Eastern District of Oklahoma. Dkt. No. 43. The Government claims the cell phone "confirms that the defendant had access to J.M. and R.M. during the charged time-period and sent messages to his co-defendant to establish if she was 'going to talk' to authorities." Dkt. No. 148 at 5. Defendant's conclusory and speculative description of the cell phone's contents, the wide timeframe of charged conduct, and the alleged *inculpatory* evidence on the cell phone all undermine Defendant's claim that he has suffered material prejudice.

Further, "[a] defendant's independent awareness of [] exculpatory evidence" can make the Government's disclosure of that evidence cumulative and immaterial. *Ahrensfield*, 698 F.3d at 1321 (quoting *United States v. Quintanilla*, 193 F.3d 1139, 1149 (10th Cir. 1999)). "[A] defendant is not denied due process by the government's nondisclosure of evidence if the defendant knew of the evidence anyway." *Id.* (modification in original) (quoting *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009)). Who better would know the contents of Defendant's cell phone than Defendant himself? The report Defendant appended to his motion demonstrates that he was aware of the evidence he believes exists on the phone at the time he was arrested. *See* Dkt. No. 145-1. This further weighs against a finding of material prejudice.

---

messages out loud for [the officer] to hear." *Id.* The officer "then read the messages out loud." *Id.* The report does not describe the substance of the messages.

Nothing about this gives the Court concern that earlier disclosure of the cell phone would have created a reasonable doubt of Defendant's guilt. Nor does the timeframe threaten to cause disarray to trial preparation. According to the Government's response, Defendant received an extraction of the cell phone on October 13, 2023. Dkt. No. 148 at 4. Trial is set for November 6, 2023. Dkt. No. 65. In addition to the knowledge that both client and counsel have had regarding the phone's contents for months, Defendant and his counsel have more than three weeks with the tangible materials to prepare for trial. The record does not support a conclusion that the Government was dilatory in its compliance with *Brady* to Defendant's material prejudice. Rather, Defendant was dilatory in abruptly raising, then abandoning, then raising again the issue. No constitutional violation occurred.

**II.   Rule 16**

Federal Rule of Criminal Procedure 16 "provide[s] a federal standard above" the "constitutional floor" established by *Brady*. *United States v. Simpson*, 845 F.3d 1039, 1071 n.9 (10th Cir. 2017). The rule requires the Government to disclose documents, data, and tangible objects, among other things, upon a defendant's request. Should the Government fail to comply, the Court may order that party to permit the discovery or inspection; grant a continuance; prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). "The court should impose the least severe sanction that will accomplish prompt and full compliance with the discovery order." *United States v. Brown*, 592 F.3d 1088, 1090 (10th Cir. 2009) (quotation and citation omitted).

When evaluating potential Rule 16 sanctions, the Court "should typically consider (1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to defendant as a result of the delay; and (3) the

feasibility of curing the prejudice with a continuance." *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999). "Frequently it will be found that the party who requested disclosure has not been prejudiced and that no sanction is needed." *United States v. Charley*, 189 F.3d 1251, 1262 (quoting 2 Charles Alan Wright, *Federal Practice and Procedure* § 260, at 121-22).

The Court has already found that the Government was not dilatory and that Defendant was not prejudiced in the handling of the cell phone. For the same reasons there was no constitutional violation, there was no Rule 16 violation.

### III.   Due Process Protections Act

The DPPA "reaffirmed, but did not expand, preexisting prosecutorial obligations in discovery." *United States v. Buntyn*, No. 1:20-CR-708-KWR, 2021 WL 4456738, at *2 (D.N.M. Sept. 29, 2021) (citing Pub. L. No. 116-182, 134 Stat. 89 (2020)).[7] Because it did not expand the prosecutorial obligations set out in *Brady* and Rule 16, it provides no independent basis for analysis or court action. *See Due Process Protections Act*, 1 Criminal Trial Techniques § 29:26 (2023) ("While the statute and Rule 5 create additional citational authority for discovery motions and

---

[7] Specifically, the DPPA added a subsection to Federal Rule of Criminal Procedure 5 regarding initial appearances that states:

> (f) REMINDER OF PROSECUTORIAL OBLIGATION.—
>
> (1) IN GENERAL.—In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law.
>
> (2) FORMATION OF ORDER.—Each judicial council in which a district court is located shall promulgate a model order for the purpose of paragraph (1) that the court may use as it determines is appropriate.

Fed. R. Crim. P. 5(f).

10

requests, it does not create a remedy or sanction for non-compliance either by the U.S. Attorney or the court.").

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion to dismiss [Dkt. No. 145] is DENIED.

Dated this 17th day of October 2023.

                                                JOHN F. HEIL, III
                                                UNITED STATES DISTRICT JUDGE